UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

**FILED**

NOV 1 0 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

Chizoma Onyems
Plaintiff,
v.
Defendant's Names:
HOA Management Trust
Meadowbrook Owners Association
United Trustee Services
JP Morgan Chase
Select Portfolio Servicing, Inc

Case No.: 2:25-CV-3256(ETLN-CSK(PS) Non Jury Trial

## MOTION FOR HEARING AND REQUEST FOR INJUNCTIVE RELIEF

COMES NOW Plaintiff, Chizoma Onyems

], appearing pro se, and respectfully moves this Honorable Court to schedule a hearing and grant injunctive relief to protect Plaintiff's property rights in connection with the property located at [insert property address]. This motion is brought pursuant to 28 U.S.C. §§ 1331, 1332, and 1346, the Fifth Amendment to the United States Constitution, and other applicable federal and state laws.

### I. JURISDICTION

1.    This Court has diversity jurisdiction under 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 and is between citizens of different states. Plaintiff is an individual a US Citizen in State of California. Defendant JP Morgan Chase is a corporation headquartered in Monroe State of Louisiana. The Defendant Select Portfolio servicing is headquartered in West Valley City in the State of Utah.

2.    This Court has federal question jurisdiction under 28 U.S.C. § 1331, because the matter arises under the U.S. Constitution and federal statutes governing banking, due process, and property rights.

3.    This Court has jurisdiction under the Tucker Act (28 U.S.C. §§ 1346(a)(2), 1491) for:

•    Contractual Claims: Claims founded upon express or implied contracts with the United States, or entities acting in the government's interest (such as federally regulated or funded agencies).

• Fifth Amendment Takings Claims: Claims that government actions—directly or indirectly—constitute a "taking" of private property for public use without just compensation.

4. Plaintiff also invokes this Court's equitable authority to enforce compliance with directives of the California Department of Financial Protection and Innovation (DFPI) and the Office of the Comptroller of the Currency (OCC).

## II. FACTUAL BACKGROUND

1. Plaintiff is the lawful property owner of 823 Sunnyslope Way, Auburn Ca 95604 for which all county property taxes have been duly paid and recorded in Plaintiff's name.

2. Defendants and/or their agents have unlawfully entered Plaintiff's property, interfered with documents and ownership rights, and obstructed evidence. At numerous occasions delivered boxes and mails to our residence when she is home and I am out of the house. I do not know what is contained but kept record of incidents.

3. Plaintiff reported these intrusions to the Federal Bureau of Investigation (FBI) for record purposes. Also reported my missing computer incident which the Police documented as incident of family complicit did not issue report. My work incident resulting to my resignation was also reported to FBI

4. The OCC has issued federal directives requiring the Defendants (or their parent institutions) to comply with applicable banking, servicing, and lending regulations, yet they remain in violation.

5. Plaintiff previously paid all lawful sums to Rex and Rosalie Davis, prior owners, before the Homeowners' Association (HOA) improperly converted the property into two lots, thereby infringing upon Plaintiff's driveway and property rights.

6. In the interest of peace and neighborhood cooperation, Plaintiff personally spoke with a resident of the HOA and granted permission to continue limited driveway construction to create a separate drive. This allowance was made solely as a gesture of goodwill and did not constitute any waiver or surrender of Plaintiff's property rights.

7. Plaintiff is a parent and caretaker of children who are honor students and model citizens, demonstrating academic excellence and strong moral character. (See Exhibit A.)

8. Plaintiff seeks judicial protection of the home to preserve family stability during the children's continuing education, including high school graduation and dual college enrollment.

## III. LEGAL BASIS AND ARGUMENT

### A. Fifth Amendment and Due Process

Plaintiff's ownership rights are constitutionally protected. Any deprivation or interference with property without due process of law constitutes a violation of the Fifth Amendment. Defendants continued to enter my residence and also conducting surveillance which I reported to the FBI upfront.

### B. DFPI and OCC Oversight

The DFPI and OCC possess regulatory authority over the Defendants' lending and servicing practices. The Defendants' noncompliance with official directives justifies this Court's equitable intervention. (See Exhibit B: OCC Directive or Correspondence.)

C. Tucker Act Jurisdiction
    1.    Contractual Claims:

The Tucker Act provides jurisdiction for claims based on express or implied contracts with the United States, or entities acting on its behalf. Where a private party operates under federal oversight or in partnership with a federal agency—such as in lending, servicing, or property management functions—disputes over contractual performance or payment may fall within Tucker Act coverage.

    2.    Fifth Amendment Takings Claims:

Even without a formal contract, where government-related activities amount to a "taking" of private property for public use—such as permanent interference, unlawful construction, or obstruction—property owners may seek just compensation under the Tucker Act. This serves as a constitutional safeguard for private citizens whose property rights are impaired by government or federally influenced action.

D. Equitable Relief

Federal courts possess inherent equitable power to enjoin restore property possession, and preserve the status quo while substantive claims are resolved.


IV. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

    1.    Schedule a hearing on this motion at the earliest available date;

    2.    Order Defendants to reconvey title and deliver possession of the property to Plaintiff. Delivering property title is enough not asking for money unless deem appropriate

    3.    Order necessary repairs for any structural or ordinance violations;

    4.    Direct DFPI, OCC, and the U.S. Department of Justice to oversee compliance and determine appropriate restitution or compensation;

    5.    Authorize Plaintiff to open a safe deposit box for preservation of will and property records;

    6.    Grant such other relief as is just and proper.

    7.  Allow wife receive amount deemed fair despite after sale of house despite our differences. She has been working paying the bills.

V. ATTACHED EVIDENCE

    •    Exhibit A: Academic records and commendations showing the children's good citizenship and scholastic achievement.

    •    Exhibit B: Correspondence or directives from the Office of the Comptroller of the Currency (OCC) requiring Defendant compliance.

    •    Exhibit C: County tax payment records showing Plaintiff as the current owner of record.

•    Exhibit D: DFPI mediation correspondence or directives related to the dispute.Mediation is what I requested from DFPI.
•    Exhibit E: Property and payment records supporting implied or contractual relations subject to the Tucker Act.
.    Exhibit F. Deed of trust show X is off marked with exceptions show lack of compliance. True compliance is sort reflect current owner per tax record.

Letter reply sent to office of the currency show my willingness to resolve matters avoid litigation costs.

VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant the requested hearing and injunctive relief to restore Plaintiff's property rights, enforce federal and state regulatory compliance, and provide equitable and constitutional redress under the Tucker Act and Fifth Amendment.

Respectfully submitted,

Dated:November 12, 2025

Chizoma Onyems
Pro Se Plaintiff
823 Sunnyslope Way
Auburn Ca 95603
(530)320-3415
Ochizoma@gmail.com

Certification:

I certify to the best of my knowledge information and believe that complaint is not being presented for an improper purpose such as harass, cause unnecessary delay increase cost of litigation (2) is supported by existing law and by non frivolous arguments extending, modifying or reversing existing law. The factual has evidentiary support specifically identified delivered to DFPI and matter referred by the Federal Circuit after a reasonable opportunity for further investigation or discovery and the complaint complied with the requirement of Rule 11.

I agree to provide Clerks office with any change to my address where case related peppers may be served.I understand that my failure to keep current address on file with the clerk's office  may result to dismissal in the dismissal of my case.

November 12, 2025

/s/Chizoma Onyems-Pro see
CHIZOMA ONYEMS

Defendants:

Meadowbrook owners Association
Tim Monroe
Granite Bay vista
160 blue Ravine Rd Ste C
Fulsome Ca 95630
916-985-3633

HOA Management Trust
Granite Bay vista
160 blue Ravine Rd Ste C
Fulsome Ca 95630
916-985-3633

United Trustee Service
Tracie  Sweetman
San Ramone Vally Blvd, suite 353
Danville Ca 94526
925-855-8554

JP Morgan Chase Bank NA
Mail Code-7100
700 Kansas Lane
Monroe, Louisiana 71203
318-398-8991

Select Portfolio Servicing Inc
3217 South Decker Lake Drive
West Vally City
Utah 84119
800-258-8602

7

Exhibit A

M **Gmail**

---

## Re: Request for appointment

---

**Chrissy Guerra** <cguerra@puhsd.k12.ca.us>                                    Fri, Nov 7 at 9:44 AM
To: Chizoma Onyems <ochizoma@gmail.com>

Good morning,

I was able to check in with Munachiso. He did share that he comes in early on Thursday mornings for the Honors Chemistry seminar. If students complete this honors seminar, they get will receive honors credit for that portion of the class. He shared that his Sierra College Dual Enrollment classes are going well, so it sounds like this term has been strong for him.

Feel free to reach out if you have any questions!

Best,
Chrissy Guerra

On Fri, Nov 7, 2025 at 8:38 AM Chizoma Onyems <ochizoma@gmail.com> wrote:
Thank you

Chizoma Onyems
823 Sunnyslope Way
Auburn Ca 95603
(530)320-3415

On Fri, Nov 7, 2025 at 8:24 AM Chrissy Guerra <cguerra@puhsd.k12.ca.us> wrote:
Good morning,

It looks like Munachiso is doing really well in Chemistry and has an A. I can check with him and see how he is feeling about the workload, but based on what I can see, he's been doing well in school. His grade is a little lower in his Welding class right now, but I think that there are just a couple of missing assignments and the teacher hasn't updated the gradebook.

Best,
Chrissy Guerra

On Thu, Nov 6, 2025 at 4:19 PM Chizoma Onyems <ochizoma@gmail.com> wrote:
Hello Chrissy:

Yes, I can. I wanted to know if he is doing alright keeping up with his school work load. He is taking a lot of science classes. From my understanding from him,. he stays at school when school is over to do extra chemistry. If he is doing alright we don't need to meet. But if you believe is too much for him you let me know what can be done to overcome the challenges based on your experience working with the students. Advise.

Chizoma Onyems
823 Sunnyslope Way
Auburn Ca 95603
(530)320-3415

On Thu, Nov 6, 2025 at 4:09 PM Chrissy Guerra <cguerra@puhsd.k12.ca.us> wrote:
Mr Onyems,

Can you share more context about your request? I would be happy to give you a call in the next couple of school

**M Gmail**

---

## Re: Request for appointment

---

**Chrissy Guerra** <cguerra@puhsd.k12.ca.us>                                    Fri, Nov 7 at 8:24 AM
To: Chizoma Onyems <ochizoma@gmail.com>

Good morning,

It looks like Munachiso is doing really well in Chemistry and has an A. I can check with him and see how he is feeling about the workload, but based on what I can see, he's been doing well in school. His grade is a little lower in his Welding class right now, but I think that there are just a couple of missing assignments and the teacher hasn't updated the gradebook.

Best,
Chrissy Guerra


On Thu, Nov 6, 2025 at 4:19 PM Chizoma Onyems <ochizoma@gmail.com> wrote:
> Hello Chrissy:
>
> Yes, I can. I wanted to know if he is doing alright keeping up with his school work load. He is taking a lot of science
> classes. From my understanding from him,. he stays at school when school is over to do extra chemistry. If he is doing
> alright we don't need to meet. But if you believe is too much for him you let me know what can be done to overcome the
> challenges based on your experience working with the students. Advise.
>
> Chizoma Onyems
> 823 Sunnyslope Way
> Auburn Ca 95603
> (530)320-3415
>
>
> On Thu, Nov 6, 2025 at 4:09 PM Chrissy Guerra <cguerra@puhsd.k12.ca.us> wrote:
>> Mr Onyems,
>>
>> Can you share more context about your request? I would be happy to give you a call in the next couple of school days.
>>
>> Best,
>> Chrissy Guerra
>>
>> On Thu, Nov 6, 2025 at 12:24 PM Chizoma Onyems <ochizoma@gmail.com> wrote:
>>> Hello Chrissy
>>>
>>> I am requesting appointment thanks
>>>
>>> Chizoma Onyems
>>> 823 Sunnyslope Way Auburn, CA 95693
>>> (530)320-3415
>>> Ochizoma@gmail.com
>>>
>>>
>>>
>> [Quoted text hidden]

days.

Best,
Chrissy Guerra

On Thu, Nov 6, 2025 at 12:24 PM Chizoma Onyems <ochizoma@gmail.com> wrote:
Hello Chrissy

I am requesting appointment thanks

Chizoma Onyems
823 Sunnyslope Way Auburn, CA 95693
(530)320-3415
Ochizoma@gmail.com

--
Chrissy Guerra

Counselor (Last Names L-Ri)
Del Oro High School

Del Oro Counseling Website
PUHSD Mental Health Website

[Quoted text hidden]

Exhibit B

 **Office of the Comptroller of the Currency**

October 29, 2025

Chizoma Onyems
823 Sunnyslope Way
AUBURN, CA  95603

Re: Case # CS0404247
JPMorgan Chase Bank, National Association

Dear Chizoma Onyems:

This letter acknowledges receipt of your correspondence concerning the above-referenced financial institution.  The Office of the Comptroller of the Currency (OCC) is the federal regulator responsible for this financial institution.  Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG).  Please make note of the case number listed above and reference the case number on any future correspondence or contact with our office.

We have reviewed the information you provided and contacted the financial institution requesting a response to your issue(s).  In most instances, the financial institution will respond directly to you and copy us in writing.  Once you receive the financial institution's response, it is very important that you carefully review their summary and action(s) taken, if any.

If the financial institution has satisfactorily addressed your issue(s) and/or concern(s), no further action is required on your part.  However, if the financial institution failed to address your issue(s) and/or concern(s) or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the financial institution's letter.  Please include in your reply, the specific issue(s) that the financial institution failed to address or, if applicable, the reason(s) you disagree with the financial institution's assessment.  Also, please include any additional documentation that supports your position.

The OCC examines national banks and federal savings associations to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations.

The CAG was established to assist customers who have questions or complaints involving national banks and federal savings associations.  For additional information on the OCC and CAG please visit www.helpwithmybank.gov.

The CAG offers guidance and assists consumers in resolving complaints about national banks and federal savings associations and their operating subsidiaries.

Customer Assistance Group, P. O. Box 53570, Houston, Texas 77052
Phone: (800) 613-6743, FAX: (713) 336-4301
Internet Address: www.HelpWithMyBank.gov

20

The OCC is an administrative agency and does not have jurisdiction to resolve contractual and factual issues.  We do not have judicial authority and cannot award damages in excess of an institution's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.  If you would like to check the status of your case online, please visit www.helpwithmybank.gov and click on the "Check Case Status" link. If you have any questions, please contact this office at the telephone number listed below and reference the case number shown above.

Sincerely,

*Customer Assistance Group*

Exhibit C

# PLACER COUNTY TAX COLLECTOR
**Tristan Butcher, Treasurer/Tax Collector**

2976 Richardson Drive, Auburn, CA 95603, (530) 889-4120
www.placer.ca.gov/tax

# PAYMENT RECEIPT

**Payor:**

ONYEMS CHIZOMA
823 SUNNYSLOPE WAY
AUBURN CA 95603

**Assessee:**

ONYEMS CHIZOMA
823 SUNNYSLOPE WAY
AUBURN CA 95603

| Parcel(s) Paid | Fiscal Year | Taxes |
|---|---|---|
| 042-407-017-000 | 2025 - 2026 | 5,458.01 |
| 823 SUNNYSLOPE WY, AUBURN CA 95603 | | |

| 1st Instl | Description | Amt |
|---|---|---|
| | Tax | 5,458.01 |

| | TOTAL TAXES AND FEES | 5,458.01 |
|---|---|---|

| Payment(s) Tendered | Transactions | Total |
|---|---|---|
| Cash | 1 | 5,460.01 |

| **Register C099 Collection 63** | **Total Tendered:** | **5,460.01** |
|---|---|---|

| | **Change Given:** | **2.00** |
|---|---|---|

THANK YOU FOR YOUR PAYN
t

ONYEMS CHIZOMA
823 SUNNYSLOPE WAY
AUBURN CA 95603

## COUNTY VALUES, EXEMPTIONS AND TAXES

| PHONE #S | | VALUE DESCRIPTION | PRIOR | CURRENT | THIS BILL |
|---|---|---|---|---|---|
| VALUATIONS (530) 889-4300 | | LAND | | 298,300 | 298,300 |
| TAX RATES   (530) 889-4160 | | STRUCTURAL IMPROVEMENTS | | 567,700 | 567,700 |
| EXEMPTIONS (530) 889-4300 | | H HOMEOWNERS EXEMPTION | | -7,000 | -7,000 |
| PAYMENTS   (530) 889-4120 | | | | | |
| PERS PROP  (530) 889-4300 | | NET TAXABLE VALUE | | 859,000 | 859,000 |
| ADDR CHGS  (530) 889-4300 | | | | | |
| GEN. INQ.   (530) 889-4120 | | | | | |

VALUES X TAX RATE PER $100  1.000000     8,590.00

## VOTER APPROVED TAXES, TAXING AGENCY DIRECT CHARGES AND SPECIAL ASSESSMENTS

| PHONE #S | CODE | DESCRIPTION | ASSESSED VALUES | X | TAX RATE PER $100 | = | AGENCY TAXES |
|---|---|---|---|---|---|---|---|
| (530) 889-4173 | 35250 | Sierra Coll SFID #4 B&I 2018 Series A | 859,000 | | .002190 | | 18.80 |
| (530) 889-4173 | 35260 | Sierra Coll SFID #4 B&I 2018 Series B | 859,000 | | .002723 | | 23.38 |
| (530) 889-4173 | 35270 | Sierra Coll SFID #4 B&I 2018 Series C | 859,000 | | .000403 | | 3.46 |
| (530) 889-4173 | 35405 | Placer Union HS District B&I 1999 Measure | 859,000 | | .002206 | | 18.94 |
| (530) 889-4173 | 35450 | Placer High Campus B&I 2018 A SFID #1 | 859,000 | | .009168 | | 78.74 |
| (530) 889-4173 | 35460 | Placer High Campus B&I 2018 B SFID #1 | 859,000 | | .008064 | | 69.26 |

| PHONE #S | DESCRIPTION | DIR CHRG | PHONE #S | DESCRIPTION | DIR CHRG | PHONE #S | DESCRIPTION | DIR CHRG |
|---|---|---|---|---|---|---|---|---|
| (800) 273-5167 | Placer Mosquito & Vector | 35.90 | (530) 823-4211 | City of Auburn Sewer Chg | 1,416.62 | (916) 649-8010 | Aub Un School CFD 91-1 | 660.92 |

| | | |
|---|---|---|
| AGENCY TAXES | | 212.58 |
| DIRECT CHARGES | | 2,113.44 |
| AGENCY TAXES + DIRECT CHARGES + FEES + PENALTY + COST + DELINQUENT PENALTIES | | 2,326.02 |

| 1ST INSTALLMENT   $5,458.01<br>PAID ON 10/20/2025 | 2ND INSTALLMENT   $5,458.01<br>DELINQUENT AFTER  4/10/2026 | TOTAL TAXES $10,916.02 |
|---|---|---|

---

## PLACER COUNTY SECURED PROPERTY TAXES - 2ND INSTALLMENT PAYMENT STUB

| ASMT NUMBER: | 042-407-017-000 | 2025 | CURRENT OWNER: | ONYEMS CHIZOMA |
|---|---|---|---|---|

ORIG ASMT:    042-407-017-000
FEE NUMBER:    042-407-017-000
LOCATION:    823 SUNNYSLOPE WY

823 SUNNYSLOPE WAY
AUBURN CA 95603

MAKE CHECK PAYABLE TO:

**PLACER COUNTY TAX COLLECTOR**

2976 Richardson Drive

Auburn,  CA  95603

**2ND**

| IF PAID BY 4/10/2026   $5,458.01 |
|---|

DELINQUENT AFTER 4/10/2026  (INCLUDES 10% PENALTY OF $545.80 AND $10.00 COST)    $6,013.81

04240701700082025500000545801320000060138172025S 04102026

---

## PLACER COUNTY SECURED PROPERTY TAXES - 1ST INSTALLMENT PAYMENT STUB

| ASMT NUMBER: | 042-407-017-000 | 2025 | CURRENT OWNER: | ONYEMS CHIZOMA |
|---|---|---|---|---|

ORIG ASMT:    042-407-017-000
FEE NUMBER:    042-407-017-000
LOCATION:    823 SUNNYSLOPE WY

823 SUNNYSLOPE WAY
AUBURN CA 95603

MAKE CHECK PAYABLE TO:

**PLACER COUNTY TAX COLLECTOR**

2976 Richardson Drive

Auburn,  CA  95603

**1ST**



| PAID ON 10/20/2025   $5,458.01 |
|---|

Exhibit D

STATE OF CALIFORNIA

# DFPI

## Department of Financial Protection and Innovation

GOVERNOR **Gavin Newsom** · COMMISSIONER **KC Mohseni**

November 5, 2025

Chizoma Onyems
823 Sunnyslope Way
Auburn, California 95603

**RE: Complaint Against: Select Portfolio Servicing, Inc.**
    **Complaint Number: CN0029574**

Dear Consumer,

The Consumer Services Office of the California Department of Financial Protection and Innovation (DFPI) has received your rebuttal against Select Portfolio Servicing, Inc., and we see no new information being introduced. Because of this, we believe that we are unable to further assist you with this matter.

At this point the DFPI is closing your complaint file. Please understand that this does not mean your concerns do not have merit. The DFPI provides a service by requiring its licensees to respond to consumer complaints in writing. But, in general, the DFPI cannot intervene on behalf of individual consumers in any particular case. The Department brings consumer protection actions when we find patterns of deception, misrepresentation or unfair business practices of statewide interest.

Please know that your complaint is valuable to the Department because it alerts our office to issues that might not otherwise be brought to our attention. We will retain your complaint in our files, and this information may provide important documentation for our use on behalf of all California consumers. If we require any additional information, we will reach out to you.

If the circumstances of your complaint make it advisable to consult an attorney, the California courts website at www.courts.ca.gov provides information about free and low-cost legal help that you may find useful.

Thank you again for your complaint. Should you have any additional questions, please contact our office at 1-866-275-2677.

Sincerely,

Consumer Services Office
Department of Financial Protection and Innovation

Exhibit E

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: Ⓒ

-6(CA) (0207)                    Page 7 of 16                    Form 3005  1/01
TDCA07 (04/02/04) PC                                   Loan No. 6413584-7915

AD999 3876                                                  0014632889



AD999 3876                    00313498000027136000                    0014632889

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



Initials: _____

-6(CA) (0207)    Page 8 of 15    Form 3005  1/01
TDCA09 (04/02/04) PC

Loan No. 6413584-7915



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: $\alpha$

**-6(CA)** (0207)

TDCA09 (04/02/04) PC

Page 9 of 15

**Form 3005 1/01**

Loan No. 6413584-7915

AD999 3876

0014632889

AD999 3876

00313498000027146000

0014632889



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.


-6(CA) (0207)
TDCA10 (04/02/04) PC

Page 10 of 15

Initials: _____

Form 3005   1/01

Loan No. 6413584-7915



AD999 3876                    00312391000012135600                    0014632889

AD999 3876                                                            0014632889

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



-6(CA) (0207)          Page 11 of 15                              Form 3005  1/01
TDCA11 (04/02/04) PC                                   Loan No. 6413584-7915

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6(CA) (0207)
TDCA12 (04/02/04) PC

Page 12 of 15

Initials: 

Form 3005   1/01

Loan No. 6413584-7915



AD999 3876

0031239100001 2145600

0014632889

AD999 3876

0014632889

Exhibit F

RECORDING REQUESTED BY

FIRST AMERICAN TITLE (CONCORD)

AND WHEN RECORDED MAIL TO

CHIZOMA ONYEMS
823 SUNNYSLOPE WAY
AUBURN, CA 95603

Trustee Sale No. **07-13714**
Title Order No. 3512419
APN 042-407-017

```
PLACER, County Recorder
JIM MCCAULEY
DOC- 2010-0097179-00
    3004
TUESDAY,  NOV 23,  2010  10:30:45
MIC     $3.00 | AUT     $3.00 | SBS     $2.00
ERD     $1.00 | RED     $1.00 | REC     $11.00
ADD     $0.00

Ttl Pd     $21.00     Rcpt # 02089444
                              clkd1mlfj1/GV/1-3
```

Space above this line for recorder's use

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT:
DOCUMENTARY TRANSFER TAX $          CITY TAX $

☐ Computed on full value of property conveyed, or

x Computed on full value less value of liens or encumbrances
remaining at time of sale – pursuant to HOA foreclosure
property being deeded back to prior owner for consideration
and payment of delinquent assessments only
City/Judicial District of City of Auburn

## GRANT DEED

**FOR A VALUABLE CONSIDERATION** receipt of which is hereby acknowledged, **MEADOWBROOK OWNERS
ASSOCIATION**

hereby GRANT(S) to

**CHIZOMA ONYEMS**

the following described real property: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Dated: November 08, 2010          MEADOWBROOK OWNERS ASSOCIATION

Bradley Romero, Board Member/Authorized Representative

STATE OF CALIFORNIA
COUNTY OF _____

On _____ before me, the undersigned, a Notary Public in and for said county, personally appeared
_____ personally known to me (or proved to me on the basis of satisfactory evidence) to
be the person(s) whose name(s) is subscribed to the within Instrument and acknowledged to me that he/she executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the Instrument.
WITNESS my hand and official seal.

_____, Notary Public

5

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6(CA) (0207)                                Page 13 of 15                        Form 3005   1/01

TDCA13 (04/02/04) PC                                                             Loan No. 6413584-7915

AD999 3876                                                      0014632889

AD999 3876                    00313498000027166000                    0014632889



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          CHIZOMA ONYEMS              -Borrower


_____          _____ (Seal)
                                                                     -Borrower


_____ (Seal)          _____ (Seal)
                    -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                    -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                    -Borrower                                         -Borrower


-6(CA) (0207)                    Page 14 of 15                    Form 3005  1/01
TDCA14 (04/02/01) PC                              Loan No. 6413584-7915



AD999 3876                    00312391000012155600                    0014632889

AD999 3876                                                          0014632889